UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES L. BLAYLOCK,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ROBERT COOPER,<br><br>　　　　　　　　Defendant. | Case No. 22-cv-10049<br>Honorable Paul D. Borman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 47) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 49)**

## I.　Introduction

Plaintiff James L. Blaylock, a prisoner of the Michigan Department of Corrections, filed this pro se civil rights action under 42 U.S.C. § 1983, alleging that Defendant Robert Cooper was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. ECF No. 1. The Honorable Paul D. Borman referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 37. Blaylock and Cooper cross move for summary judgment. ECF No. 47; ECF No. 49. The Court **RECOMMENDS** that Blaylock's motion be **DENIED** and that Cooper's motion be **GRANTED**.

## II.     Background

Blaylock was diagnosed with paranoid schizophrenia in March 2009 and received medication and counseling through May 2011.  ECF No. 53, PageID.324-341.  Blaylock alleges that he was incarcerated in 2012 and managed his condition without medication from 2013 to 2020.  ECF No. 36, PageID.158.  In August 2020, while housed at the G. Robert Cotton Correctional Facility (JCF), Blaylock requested mental health treatment and was given two diagnostic tests.  ECF No. 49-2, PageID.227-228.  The results revealed that Blaylock had overreported his symptoms and was likely malingering.  *Id.*, PageID.228.  Thus, his mental health provider at JCF declined to refer him to psychiatry.  *Id.*, PageID.230.

Blaylock was transferred to St. Louis Correctional Facility in January 2021 and first saw Cooper, a limited licensed psychologist, in February 2021.  *Id.*, PageID.213-232.  At that time, Blaylock was not in distress and declined to be seen.  *Id.*, PageID.232.  From July to October 2021, Cooper evaluated Blaylock five times for mental health concerns but consistently found that Blaylock exhibited no symptoms consistent with schizophrenia.  *Id.*, PageID.233-241.  Based on his observations and the test results from JCF, Cooper concluded that Blaylock was not schizophrenic and did not prescribe medication.  *Id.*, PageID.236.  Still, Cooper and other mental

health providers met with Blaylock when he or corrections officers reported psychiatric symptoms. *Id.*, PageID.233-242. And Blaylock was placed on observation and evaluated by mental health providers when he complained of suicidal and homicidal ideation in December 2021. *Id.*, PageID.243-272.

Blaylock claims that Cooper was deliberately indifferent to his medical needs because he denied him mental health treatment. ECF No. 36, PageID.158.

### III. Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant

3

satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotation marks omitted).  "[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion."  *Id.* (internal quotation marks omitted).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560.

**B.**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).  Because the government must provide medical care for those it has incarcerated, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of

4

pain," and thus violates the Eighth Amendment.  *Estelle*, 429 U.S. at 103-04.  But a plaintiff must show more than a mere failure to provide adequate medical care to prove a constitutional violation.  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).  "A constitutional violation arises only when a prison official exhibits deliberate indifference to a prisoner's serious illness or injury that can be characterized as obduracy and wantonness rather than inadvertence or" good-faith error.  *Id.* (cleaned up).

To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  For the objective component, Blaylock must show that Cooper's acts or omissions deprived him of "the minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm."  *Id.*  The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).  Blaylock can satisfy neither component.

## C.

Blaylock cannot satisfy the objective component because, although he maintains that he was denied mental health care, his medical records show that Cooper and other providers evaluated him 13 times between July and December 2021.  ECF No. 49-2, PageID.233-272.  In July 2021, a corrections officer referred Blaylock for a mental health assessment because he was agitated, hearing voices, and refusing food and medications.  *Id.*, PageID.235.  But when Cooper evaluated Blaylock, he was coherent, in touch with reality, calm, and exhibited no unusual behavior or language suggesting impaired reality contact.  *Id.*, PageID.233.  Blaylock denied any hallucinations and coherently described the events that the corrections officer reported, requesting that he be removed from the observation cell.  *Id.*  Blaylock also told Cooper about his previous mental health treatment, which Cooper said he would investigate.  *Id.*

The next day, a corrections officer referred Blaylock for another consult, as he was agitated, hearing voices, and having anxiety attacks.  *Id.*, PageID.236.  When Cooper evaluated Blaylock, he noted the test results from JCF showing that Blaylock was malingering.  *Id.*, PageID.237.  Cooper also found that Blaylock's symptoms did not align with schizophrenia, as the condition does not "come and go."  *Id.*  Cooper

6

concluded that Blaylock was not schizophrenic, as he made logical arguments; was in touch with reality; engaged in normal daily activities; was oriented with linear thinking; was not responding to internal stimuli; and responded to "all questioning in a direct and coherent manner." *Id.* Cooper made similar findings during evaluations with Blaylock in August and October 2021 and invited Blaylock to obtain a second opinion. *Id.*, PageID.239-241. During the October evaluation, Cooper noted that Blaylock only sought medication and did not request therapy or any other treatment. *Id.*, PageID.241.

When Blaylock claimed that he was having suicidal ideation in December 2021, Cooper placed him on observation status with other restrictions. *Id.*, PageID.243-244. And when Blaylock denied any further suicidal ideation and had a normal mental status examination, Amie Ramirez, LPC, scaled back the observation and restrictions. *Id.*, PageID.248-254. At that time, Blaylock again complained about hearing voices, but Ramirez noted that his described symptoms did not align with schizophrenia. *Id.*, PageID.249. Ramirez placed Blaylock back on observation status two weeks later, as he reportedly attempted suicide by swallowing a handful of multivitamins. *Id.*, PageID.255-266. Days later, Blaylock was removed from observation after admitting to Cooper that he

took the vitamins "in an attempt to make people believe he was overdosing" and "vehemently denied wanting to harm himself." *Id.*, PageID.267-272.

Blaylock argues that his visits with Cooper were not clinical evaluations, claiming that Cooper spent only two minutes with him, questioned his honesty, insisted that he was misdiagnosed, and ignored his complaints. ECF No. 47, PageID.195; ECF No. 52, PageID.312, 314-315; ECF No. 53, PageID.322. Although the Court must draw all inferences in favor of Blaylock, "it is not required to adopt a non-moving party's version of the facts which is blatantly contradicted by the record and which no reasonable jury could believe." *Nichols v. Unknown Party #1*, No. 1:16-cv-1392, 2018 WL 1414805, at *5 (W.D. Mich. Feb. 27, 2018), *adopted*, 2018 WL 1399477 (W.D. Mich. Mar. 20, 2018); *see also Annabel v. Heyns*, No. 2:12-cv-13590, 2016 WL 4761604, at *6 (E.D. Mich. July 26, 2016), *adopted*, 2016 WL 4729561 (E.D. Mich. Sept. 12, 2016). The medical records show that Cooper evaluated Blaylock's test results and behavior and provided rationale supporting his conclusion that Blaylock did not have schizophrenia. Meanwhile, Blaylock's arguments are unsupported by any evidence such as an affidavit or deposition testimony. Thus, the uncontroverted evidence shows that Blaylock received treatment.

To satisfy the objective component, an inmate who received treatment but claims that it was inadequate must show that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (cleaned up).  The plaintiff must offer medical evidence, such as expert testimony, showing "that the provided treatment was not an adequate medical treatment of [his] condition or pain." *Id.* (cleaned up); *see also Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021) (to prove that medical care was inadequate, "courts generally require [prisoners] to introduce medical evidence, typically in the form of expert testimony").

Blaylock has offered no evidence showing that Cooper's care was lacking.  Cooper and other providers met with Blaylock to discuss and evaluate his mental health.  And although the results of the diagnostic testing showed that Blaylock was malingering, Cooper continued to meet with him and placed him on clinical observation status when he claimed to have suicidal ideation.  *See Heard v. Huibregtse*, No. 09-cv-96, 2010 WL 2196122, at *7 (W.D. Wisc. May 27, 2010) (the plaintiff failed to show that mental health treatment was improper when the defendants continued to meet with the plaintiff and evaluate his symptoms despite diagnostic testing showing that he was malingering); *see also Hursey v. Taglia*, No. 1:11-cv-

9

388, 2012 WL 4505994, at *5-6, 12 (W.D. Mich. Sept. 10, 2012) (Defendant Taglia was not deliberately indifferent by discontinuing the plaintiff's psychotropic medication when the plaintiff received extensive psychiatric evaluations and showed signs of malingering).

Blaylock argues that Cooper's care was inadequate because he failed to review the past mental health treatment records and include them in his prison record.  ECF No. 47, PageID.196; ECF No. 52, PageID.312, 315-316.  It is true that a mental health provider's failure to perform a corroborative investigation of a plaintiff's claimed symptoms may give rise to a deliberate indifference claim.  *Comstock v. McCrary*, 273 F.3d 693, 709 (6th Cir. 2001).  But the medical records show that Cooper did review Blaylock's past records, even if he did not include them in the prison medical record.  See ECF No. 49-2, PageID.241 (stating that Cooper has seen documentation of Blaylock's previous diagnosis).  Cooper disagreed with the past diagnosis given the test results and his evaluations of Blaylock's behavior.  *Id.*  Blaylock has offered no evidence showing that this methodology was improper.[1]

---

[1] Blaylock's reliance on the report and recommendation not to dismiss the Eighth Amendment claim against Cooper is unavailing.  See ECF No. 52, PageID.315.  At that stage, the Court assumed Blaylock's allegations to be true.  ECF No. 22, PageID.104-107.  But the medical record contradicts

10

Blaylock's challenge to Cooper's assessment of his condition amounts to a mere disagreement with the care provided. *See Chastain v. Sarasin*, No. 08-12299, 2009 WL 973332, at *3 (E.D. Mich. Apr. 9, 2009) (denial of the plaintiff's request for outpatient therapy and medication in favor of psychological counseling did not give rise to a deliberate indifference claim, as the plaintiff merely disagreed with the course of treatment). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (cleaned up). Thus, "the fact that a prisoner disagrees with a course of treatment that was prescribed, or even that the treatment he did receive was negligently administered, does not rise to a constitutional violation." *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863, 870 (E.D. Mich. 2003).

## D.

Nor can Blaylock satisfy the subjective element of deliberate indifference. As described above, Blaylock's test results suggested that he

---

Blaylock's allegations, and he has failed to offer evidence creating a factual question.

was malingering, and Cooper determined that his behavior deviated from schizophrenia. ECF No. 49-2, PageID.233-241. Yet Cooper and others met with Blaylock when he requested consultations or when other prison staff reported concerning behavior. *Id.* When Blaylock claimed that he had suicidal ideation, Cooper placed him on observation status. *Id.*, PageID.243-247. And Cooper removed Blaylock from observation only when he admitted that he never intended to harm himself. *Id.*, PageID.268. Thus, there is no evidence that Cooper knew of and disregarded an excessive risk to Blaylock's mental health.

## IV. Conclusion

The Court thus **RECOMMENDS** that Blaylock's motion for summary judgment be **DENIED** (ECF No. 47) and that Cooper's motion for summary judgment be **GRANTED** (ECF No. 49).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 5, 2024

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 5, 2024.

                                         s/Marlena Williams
                                         MARLENA WILLIAMS
                                         Case Manager